UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEVEN REYNOLDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-02152-JMS-KMB |
| | ) |
| SAMUEL J. BYRD MD in his official and or individual capacity, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER DISCUSSING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Steven Reynolds alleges that the defendants—a correctional officer, two prison medical professionals, and their employer—were deliberately indifferent to serious injuries he suffered during an attack. All four defendants have asserted the affirmative defense that Mr. Reynolds failed to exhaust administrative remedies before filing suit, and all seek summary judgment on that basis.

The undisputed evidence shows that Mr. Reynolds never attempted to pursue administrative remedies concerning the correctional officer's response in the immediate aftermath of his attack, so his motion is granted. Meanwhile, the undisputed evidence shows that Mr. Reynolds' pursuit of administrative remedies regarding his ongoing medical care was thwarted, so the medical defendants' motion is denied, and the Court orders them to show cause why Mr. Reynolds should not receive summary judgment on the exhaustion defense.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a

matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is required to consider only the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II.
## Prison Litigation Reform Act and Exhaustion of Administrative Remedies

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). In this case, the substantive law is the Prison

Litigation Reform Act (PLRA), which requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," the defendants face the burden of establishing that "an administrative remedy was available and that [Mr. Reynolds] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted).

### III.
### Facts

This action consists of Eighth Amendment claims against Sergeant Manley, a correctional officer at Wabash Valley Correctional Facility (WVCF); Centurion Health of Indiana, LLC, which contracted to provide medical care to WVCF inmates; and Centurion employees Dr. Samuel Byrd

3

and Nurse Kim Hobson. When the Court screened Mr. Reynolds' complaint, it summarized his allegations:

> Mr. Reynolds was attacked by other inmates in his cell on April 27, 2022. When Sergeant Manley responded to the incident, Mr. Reynolds said he thought his ankle was broken and that he had been stabbed. However, Sergeant Manley left Mr. Reynolds in his cell for about an hour instead of immediately taking him to receive medical care.
>
> Nurse Hobson examined Mr. Reynolds, observed that his ankle was severely swollen and his abdomen had stab wounds, and called in Dr. Byrd, who ordered an x-ray. The x-ray was not taken for nine days, and it showed Mr. Reynolds' fibula was broken.
>
> After receiving the x-ray, Dr. Byrd ordered that Mr. Reynolds be provided a walking boot for six weeks. However, Mr. Reynolds did not receive the boot for another three weeks.
>
> Additional x-rays were taken on June 24 and July 22, 2022. These showed that Mr. Reynolds' broken bone had not healed properly. Eventually he was provided crutches and a cane along with the boot. His injury has not healed, and he cannot walk correctly.

Dkt. 10 at 2.

### A.  Grievance Process

The Indiana Department of Correction (IDOC) maintains an Offender Grievance Process, which is an administrative remedy program designed to allow inmates "to express complaints and topics of concern for the efficient and fair resolution of legitimate offender concerns." Dkt. 29-2 at § II. Inmates can use the grievance process to resolve concerns about "[a]ctions of individual staff, contractors, or volunteers" and "concerns relating to conditions of care or supervision within the" IDOC. *Id.* at § IV(A).

To exhaust the grievance process's remedies, an inmate must complete four steps. First, the inmate must attempt to resolve his concern informally. *Id.* at § IV(1) (formal grievance must follow "unsuccessful attempts at informal resolutions"). Second, if the inmate is unable to achieve a satisfactory resolution informally, he must submit a formal grievance to the grievance specialist.

*Id.* at § X. Third, if the inmate is dissatisfied with the grievance specialist's response, he must submit an appeal to the grievance specialist, who will transmit the appeal to the warden or the warden's designee. *Id.* at § XI. Fourth, if the inmate is dissatisfied with the warden's response, he must submit a second appeal to the IDOC's grievance manager. *Id.* at § XII.

The grievance policy imposes obligations and deadlines on inmates and administrators. After attempting unsuccessfully to resolve his concern informally, an inmate must submit a formal grievance to the grievance specialist within ten business days of the incident giving rise to the grievance. *Id.* at § X. The grievance specialist must screen the grievance for compliance with minimum standards. *Id.* at §§ X(A) (list of minimum standards), X(B) (screening process). Within ten business days, the grievance specialist must either (a) accept the grievance, log it, and issue a receipt to the inmate, or (b) reject it and return it to the inmate with an explanation. *Id.* at § X. Rejection is appropriate if the grievance does not meet the minimum standards, is submitted after the ten-business-day deadline, or grieves "a matter inappropriate to the offender grievance process." *Id.* at § X(B). When a grievance is rejected, the inmate may correct and return the grievance within five business days. *Id.* at § X(B).

An inmate may not appeal the rejection of a grievance. Rather, an inmate may proceed to the third step of the process and present an appeal only in two circumstances. First, an inmate may present an appeal after receiving a response from the Offender Grievance Specialist to an accepted grievance. *Id.* at § XI. Second, if an inmate submits a grievance that is accepted but does not receive a response within 20 business days, he "may appeal as though the grievance had been denied." *Id.* at § X.

**B.     Mr. Reynolds' Grievances**

Mr. Reynolds submitted a grievance dated June 1, 2022, stating:

5

> On 5-10-22 I had a x-ray done on my left ankle. I turned out it is fractured. Dr. Byrd ordered a walking boot & Tylenol. I was not given <u>any</u> of that. And my cruches were taken. I've ben forced to walk around on a broken ankle that is still 4 times the size of the other. It is broke. Now today 6-1-22 I saw the Dr. Byrd for the <u>first</u> time. And told it was broke, and I was supposed to receive the boot, and pain meds. And he ordered a new x-ray to see if it is healing properly, cause if not I'll have to have surgery to fix it. This is clearly malpractice and inadiquite medical help, and is a ongoing issue with me, and others. All of this could have been prevented if I was given what Dr. Byrd ordered. Now I'm in constant ongoing pain for a month.

Dkt. 42-1 at 1 (errors and emphases in original). Grievance Specialist S. Crichfield rejected the grievance and returned it on June 10, 2022. *Id.* She explained: "5/10/22 is out of time frame. You can grieve your last [healthcare request form] date or last date you were seen by medical if within the 10 business day time frame." *Id.*

On June 15, 2022, Mr. Reynolds submitted another formal grievance, stating:

> I just had a second x-ray taken on my left ankle. Due to it was fractured in late April & x-rayed in the first week of May. Dr. Byrd ordered a walking boot, and meds then I was never given. So I had a second x-ray taken on 6-7-22 to see if it is healing properly. Which it is not. It is still broken. I wasn't given the walking boot till 6-1-22, a month after. This is malpractice, inifecent medical and dangerous. Now my ankle iis healing wrong. And cause a permanent limp. This should've <u>never</u> happened, and was avoidable. This is a ongoing issue. Other people have had the same or similar problems I am in constant pain, limping, walking wierd. And I feel my ankle popping, and bones grinding. Please help. This is with in the 10 business days to file. Please help. This is a issue that not only affects me. But the wellfair of <u>all the inmates</u> here in Wabash Valley Correctional Facility. Due to it has happened to others, & probably will again.

Dkt. 42-2 at 1 (errors and emphases in original). Grievance Specialist S. Crichfield rejected this grievance too and returned it on June 21, 2022, with the following explanation: "You have had plenty of time to grieve this matter. Out of time frame. If you are having medical concerns, submit a [healthcare request form] to be seen. If you are not seen, you can grieve that within the 10 business days." Dkt. 42-2 at 2.

Mr. Reynolds submitted a third grievance in July 2022, stating:

> I just received a Healthcare Request Form Back today RFHC #552845 I put in on 7-25-22, and it says I was seen on 7-14-22 Signed on 7-19-22. However I was Never

6

> seen for this Health Care Slip. I was seen for a different one for a infection. I am still in severe pain in my ankle which is what this Health Care Slip is for. I need seen, & treated.

Dkt. 29-4 at 2. The grievance was accepted but denied. Mr. Reynolds did not pursue an appeal.

## IV.
## Analysis: Medical Defendants

The undisputed evidence shows that Mr. Reynolds attempted to seek administrative relief regarding medical care for his ankle; that Grievance Specialist Crichfield rejected his grievances as untimely even though they concerned an ongoing issue; and that her rejections prevented Mr. Reynolds from exhausting the process. This precludes summary judgment for the medical defendants.

When a prisoner "properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that [he] failed to exhaust his remedies." *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006). When prison officials "do not respond to a properly filed grievance" and "prevent a prisoner from exhausting," they "take unfair advantage of the exhaustion requirement," and the remedy becomes unavailable. *Id.* at 809.

That happened here. Grievance Specialist Crichfield rejected and returned two grievances as untimely even though they concerned matters that were ongoing when Mr. Reynolds submitted the grievances. Mr. Reynolds could not appeal because his grievance was not accepted. The improper rejection of Mr. Reynolds' formal grievances rendered the rest of the process unavailable to him.

The defendants contend in reply that the grievance policy required Mr. Reynolds to revise and resubmit his formal grievances based on Grievance Specialist Crichfield's instructions. But this argument ignores the basis for Grievance Specialist Crichfield's rejection—that his grievances were too late. Mr. Reynolds could not travel back in time and submit his grievances sooner. When

Grievance Specialist Crichfield wrongly cited untimeliness as a basis for rejection, she conveyed that Mr. Reynolds could never submit a proper grievance regarding the issues he had raised.

The defendants contend that Mr. Reynolds' formal grievances contained other errors that he could have corrected. His first formal grievance included the wrong date in the "date of incident" box, and the second stated that other inmates also experienced problems receiving timely medical care. Dkts. 42-1, 42-2. But the grievance policy does not identify the inclusion of an incorrect date as a basis for rejecting and returning a grievance. *See* dkt. 29-2 at §§ X(A), X(B). Further, although Mr. Reynolds stated in his second grievance that other inmates experienced similar deficiencies in their medical care, it cannot be fairly read as seeking relief on behalf of anyone but himself. *See* dkt. 44 at 5 (defendants' reply); dkt. 42-2 at 1 (requesting "Better medical & my ankle fixed"). Regardless, even if Mr. Reynolds revised the date on his first grievance or eliminated references to other inmates on his second, he could not have expected to submit an acceptable grievance because Grievance Specialist Crichfield told him it was too late to do so.

The defendants also contend that they are entitled to summary judgment because Mr. Reynolds did not appeal his July 2022 grievance. "In order to exhaust their remedies," though, "prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Mr. Reynolds submitted two formal grievances raising an ongoing medical issue, and Grievance Specialist Crichfield wrongly returned them as untimely. He satisfied his obligation to seek administrative relief, and Grievance Specialist Crichfield prevented him from using the complete administrative process. The PLRA does not bar Mr. Reynolds from pursuing his claims now because he did not continue to raise them in grievances after his first two were wrongly rejected.

8

## V.
## Analysis: Sergeant Manley

Meanwhile, the undisputed facts show that Mr. Reynolds pursued no administrative remedies concerning his claims against Sergeant Manley. Mr. Reynolds was not required to *name* Sergeant Manley in any of his grievances. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."). Rather, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Although they arise ultimately from the same series of incidents, Mr. Reynolds' claims concern wrongs of two separate natures: Sergeant Manley failed to respond to a medical emergency immediately after an attack, and the medical defendants failed to promptly and properly diagnose and treat an injury over a much longer period. The grievances Mr. Reynolds submitted only alerted the prison staff to the second set of wrongs, and he offers no evidence that he otherwise attempted to pursue (or was prevented from pursuing) administrative relief based on Sergeant Manley's conduct.

## VI.
## Motion for Court Assistance

Mr. Reynolds' motion for Court assistance, dkt. [47] is **granted** to the extent the **clerk is directed** to include a copy of the public docket sheet with this order. Mr. Reynolds may request copies of specific documents by filing number.

Mr. Reynolds' motion is **denied** insofar as it requests the appointment of counsel. The Court has previously notified Mr. Reynolds that he must first demonstrate that he has made reasonable efforts to recruit counsel on his own. Dkts. 38, 41. Mr. Reynolds states that he is illiterate and no longer has assistance from other inmates, but his motion for assistance is

9

understandable, and he indicates that he wrote it on his own. *See* dkt. 47. Despite his limitations, Mr. Reynolds appears to be capable of writing attorneys on his own and seeking their assistance.

## VII.
## Conclusion

Defendant Manley's motion for summary judgment, dkt. [28], is **granted** for the reasons in Part V. Claims against Sergeant Manley are **dismissed without prejudice**. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("*all* dismissals under § 1997e(a) should be without prejudice."). The **clerk is directed** to **terminate** Sergeant Manley from the docket. No partial final judgment will issue.

The medical defendants' motion for summary judgment, dkt. [32], is **denied** for the reasons in Part IV. The medical defendants will have **through February 9, 2024**, to **show cause** why the Court should not grant summary judgment in Mr. Reynolds' favor on the exhaustion defense. *See* Fed. R. Civ. P. 56(f)(1). The Court must resolve the exhaustion defense before proceeding to the merits of the action. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) ("If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits."). The material facts regarding Mr. Reynolds' efforts to exhaust do not appear to be in dispute, and he appears to be entitled to proceed for the reasons discussed in Part IV.

Mr. Reynolds' motion for Court assistance, dkt. [47] is **granted** to the limited extent discussed in Part VI. The **clerk is directed** to include a copy of the public docket sheet with this order.

**IT IS SO ORDERED.**

Date: 1/29/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

STEVEN REYNOLDS
108390
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810

Robert C. Brandt
RILEY BENNETT EGLOFF LLP
rbrandt@rbelaw.com

Stephanie Michelle Davis
Office of Attorney General Todd Rokita
stephanie.davis@atg.in.gov

Jaclyn Michelle Flint
RILEY BENNETT EGLOFF LLP
jflint@rbelaw.com

Erica Lee Sawyer
INDIANA ATTORNEY GENERAL
Erica.Sawyer@atg.in.gov